UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE KIAI, | Case No. SA CV 13-118-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## I.

## **INTRODUCTION**

On January 24, 2013, plaintiff Andre Kiai filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Pursuant to a January 25, 2013 case management order, the parties

submitted a detailed joint stipulation ("JS") for decision on June 3, 2013. Plaintiff presents four issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly discounted plaintiff's credibility; (2) whether the ALJ properly considered the testimony of a lay witness; (3) whether the ALJ properly considered plaintiff's claimed hand limitation; and (4) whether the ALJ properly determined plaintiff could perform his past relevant work.

Having carefully studied, inter alia, the JS, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ gave clear and convincing reasons for discounting plaintiff's credibility, and thus properly disregarded plaintiff's claimed hand limitations. For the same reason, his error in rejecting lay witness testimony without comment was harmless. Finally, the court finds plaintiff failed to overcome the presumption of the applicability of the Dictionary of Occupational Titles ("DOT") classification of his past relevant work, and therefore the ALJ did not err in finding plaintiff could perform such work as generally performed. Accordingly, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was sixty-six years old on the date of his September 13, 2011 administrative hearing, has a doctoral degree in education. AR at 28, 34, 107, 138. His past relevant work includes employment as a sales account executive, an admissions director and an admissions representative of an educational program, and a data entry clerk. *Id.* at 52.

On or about April 29, 2010, plaintiff protectively filed applications for a period of disability and DIB, alleging that he has been disabled since May 25, 2008, due to diabetes, bilateral carpal tunnel, low back pain, and diabetic

neuropathy. *Id.* at 107, 120, 124. Plaintiff's application was denied initially and upon reconsideration, after which he requested a hearing. *Id.* at 75-100.

On September 13, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 28, 33-47. The ALJ also heard testimony from Dr. Michael Goldhamer, a medical expert, and Victoria Rei, a vocational expert ("VE"). *Id.* at 47-50, 51-54.

On October 20, 2011, the ALJ denied plaintiff's request for benefits. *Id.* at 8-20. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of May 25, 2008 to July 20, 2010. *Id.* at 13.

At step two, the ALJ found that from May 25, 2008 to July 20, 2010, plaintiff suffered from severe impairments consisting of diabetes mellitus, bilateral carpal tunnel, cervical disc disease, degenerative joint disease in his left hand, hypertension, and coronary artery disease. *Id.*

At step three, the ALJ determined that, for the period May 25, 2008 to July 20, 2010, the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 14.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that, through the date last insured, plaintiff could: "sit for a total of six hours in an eight-hour workday; stand and walk for a total of six hours in an

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

eight-hour workday; occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; frequently climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, scaffolds, or ropes; occasionally use the left and right upper extremities for gross and fine manipulations; and [have] no concentrated exposure to unprotected heights, dangerous or fast moving machinery, cold temperatures, or dust, fumes, and gasses." *Id.* at 14.

The ALJ found, at step four, that from May 25, 2008 to July 20, 2010, plaintiff was capable of performing past relevant work as a sales account executive (DOT 251.357-010) as actually and as generally performed. *Id.* at 16-17. The ALJ noted that this work did not require the performance of work-related activities precluded by the plaintiff's RFC. *Id.*

The ALJ therefore concluded that plaintiff was not suffering from a disability as defined by the Social Security Act at any time from May 25, 2008, the alleged onset date, through July 20, 2010. *Id.* at 17.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6, 7. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v.*

*Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.    The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility, and Therefore Was Not Required to Accept Plaintiff's Claimed Hand Limitations**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject his testimony regarding his pain and limitations, especially those concerning his hands. JS at 3-7, 12-14. While some of the ALJ's reasons are not clear and convincing, overall, the court disagrees with plaintiff's assertion.

5

The ALJ must make specific credibility findings supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment, "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, at the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 15. But the ALJ also found that plaintiff's "statements concerning the intensity,

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* Because the ALJ did not find any evidence of malingering, at the second step he was required to provide clear and convincing reasons for discounting plaintiff's credibility.

The ALJ specifically discounted plaintiff's credibility because: (1) plaintiff made inconsistent statements concerning his limitations; (2) plaintiff failed to follow prescribed treatments; (3) the objective medical evidence does not support the severity of plaintiff's alleged limitations; and (4) plaintiff received unemployment benefits during the period of alleged disability. *Id*. at 15-17. For the reasons that follow, this court affirms the ALJ's adverse credibility determination and finds that the majority of the ALJ's proffered reasons are clear and convincing and supported by substantial evidence.

The first ground the ALJ provided for finding plaintiff's testimony not credible was that plaintiff made inconsistent statements concerning his limitations. *Id.* at 15-16. Plaintiff had reported that he could not lift anything and could only carry "very very light things." *Id.* at 15, 147. This contradicted his hearing testimony that "he could carry a gallon of milk or orange juice," the ALJ found. *Id.* at 15. Similarly, the ALJ found plaintiff's descriptions of his sitting limitations inconsistent with one another. *Id.* at 16. To wit, plaintiff testified at the hearing that he could – at most – sit for thirty minutes before experiencing back pain. *Id.* On a separate occasion, however, plaintiff had claimed that his back hurt when he sat down for more than one hour. *Id.* at 16. Also, plaintiff's physical therapist "expressly stated" that plaintiff did not report sitting limitations on three visits during November and December of 2009. *Id.* Although this court does not find the illustrations provided by the ALJ to be exceptionally persuasive examples of inconsistent statements, the statements are arguably at odds and this court does not reweigh the evidence. "Where the evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

To the extent that the ALJ reasoned that plaintiff's statements about sitting limitations were inconsistent with his statements about driving, such reasoning is not supported by substantial evidence. Plaintiff testified that he did not have difficulty driving; however, he quickly qualified that statement, explaining that he "still had the back pain and also [his] hands were weak. . . . [He] could get to work. . . . [b]ut it was painful." AR at 46. The ALJ recounted only a portion of this testimony in his opinion, stating only that plaintiff "testified that he had no difficulty driving." *Id.* at 16. Because the ALJ mischaracterized plaintiff's testimony, the ALJ's assertion that plaintiff's statements about driving conflict with his statements about his sitting limitations is not supported by substantial evidence.

The second ground for an adverse credibility finding – failure to follow prescribed courses of treatment – is also clear and convincing. *See Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility, including . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (internal quotation marks and citations omitted); SSR 96-7p, *21 (an "individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). The ALJ cited both plaintiff's noncompliance with physical therapy and failure to have surgery for his carpal tunnel syndrome as reasons to discount plaintiff's credibility.

Plaintiff's noncompliance with prescribed treatment is reflected in his physical therapy progress reports, as the ALJ notes in his opinion. AR at 16, 313, 314, 319. Plaintiff "required constant cueing [by his physical therapist] for

achievement of neutral spine." *Id.* at 16. And "[i]n spite of extensive, repetitive education and encouragement, [plaintiff] did not perform optimal body mechanics in any components of activity such as sitting, lying down, standing, lifting or reaching." *Id.* Nor had he "implemented recommended cervical supporting techniques for sleep, working on the computer, and driving." *Id.* Ultimately, plaintiff's lack of progress and lack of involvement in his home exercise program resulted in his discharge from physical therapy. *Id.* The ALJ properly discounted plaintiff's subjective complaints based on his noncompliance with the treating physicians' prescribed court of treatment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In addition to plaintiff's noncompliance with physical therapy, the ALJ puts forth plaintiff's "refusal" to have surgery for his carpal tunnel syndrome, despite the recommendations of two doctors, as a reason to discount plaintiff's credibility. AR at 15-16. "Refuse" is a somewhat misleading characterization. In a referral to Dr. Tze C. Ip, Dr. Mark Van Houten wrote "[t]his patient may need urgent decompression." *Id.* at 343. Three days later, Dr. Ip stated his treatment plan for plaintiff consisted of a recommendation of surgical decompression to prevent possible permanent nerve damage and loss of functional capacity. *Id.* at 349. Dr. Ip noted that he had spoken to plaintiff about the risks and benefits of surgery and plaintiff was considering it. *Id.* Plaintiff testified at least one doctor had recommended surgery. *Id.* at 42. Plaintiff also testified he had not had surgery, but gave no explanation for why he did not. *Id.* at 37. Given the ambiguity as to why plaintiff did not undergo surgery, by itself this would not be a clear and convincing reason to discount plaintiff's credibility. *See, e.g., Nichols v. Califano*, 556 F.2d 931, 933 (9th Cir. 1977) ("A claimant under a disability need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective . . . . A patient may

9

be acting reasonably in refusing surgery that is painful or dangerous."). But given the other evidence in the record of plaintiff's noncompliance with prescribed treatment, the court cannot say the ALJ erred in relying on plaintiff's determination not to have the recommended surgery as one factor for discounting credibility.

The third ground for an adverse credibility finding is that plaintiff's testimony about the extent of his alleged pain and functional limitations is not supported by objective medical evidence. AR at 16; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective medicine supporting symptoms is one factor in evaluating credibility). Here, plaintiff claims the record contains objective evidence that supports his complaints of debilitating pain in his hands. JS at 5. He points to places in the record that indicate nerve compromise. *Id.*; AR at 288, 293. Thus, plaintiff asserts that the ALJ improperly evaluated the plaintiff's pain testimony and the record in discounting plaintiff's credibility. JS at 5, 12. On the contrary, however, the ALJ points to orthopedist Dr. Tze C. Ip's examination of plaintiff in January of 2010 where Dr. Ip found plaintiff "in no apparent distress" and "noted that his cervical spine flexion and extension was limited with reports of neck pain but with no radiation or discomfort to the upper extremities." AR at 16. Additionally, the ALJ noted that on December 7, 2009, plaintiff reported that his pain was "3/10" and stated that his neck had been doing better. *Id.* at 16. Thus, the ALJ's discounting of plaintiff's testimony based upon a lack of corroborative objective medical evidence is a clear and convincing reason for an adverse credibility finding supported by substantial evidence.

The fourth and final ground for the ALJ's adverse credibility finding is that plaintiff received unemployment benefits during the period of alleged disability, which required him to certify that he was willing and able to work. *Id.* at 16. The ALJ found such a certification is inconsistent with a disability claim. *Id.* This was

1  a clear and convincing reason to discount plaintiff's credibility.  *See Lamb v.*
2  *Colvin*, No. ED CV 12-1707-JCG, 2013 WL 4039446, at *2 (C.D. Cal. Aug. 7,
3  2013) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) ("receipt of
4  unemployment benefits is valid reason for discounting claimant's credibility, as it
5  indicates claimant considered himself to be capable of work and that he held
6  himself out as being available therefor")).

      Plaintiff repeats the credibility argument for a second time, in truncated form, as the third issue presented.  *See* JS at 18.  Plaintiff styles the argument as whether the ALJ failed to properly consider a hand limitation.  Specifically, he argues that his testimony concerning the extent to which he can use his hands is tantamount to the ALJ's finding that plaintiff is limited to occasional use of his hands.  *Id.*  Consequently, plaintiff contends that if the VE, when crediting plaintiff's testified-to hand limitations, found plaintiff unable to do his past relevant work, then the ALJ should have found that, too.  *Id.*  Because plaintiff's argument is necessarily precluded by the ALJ's adverse credibility determination, which the court finds to be supported by substantial evidence, the court rejects this contention.

**B.**     **The ALJ's Error in Rejecting Lay Witness Testimony Without Providing a Reason Was Harmless**

      Plaintiff contends that the ALJ erred in failing to address the lay testimony of his wife, Faranak Mansobi. JS at 14-15, 16-17.  The court agrees, but finds this error was harmless.

      "[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner

will consider evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," in determining how a claimant's impairments affect his or her ability to work); 20 C.F.R. § 416.913(d)(4) (same). The ALJ may only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, plaintiff's wife provided a declaration at the hearing. JS at 14; AR at 201-02. Mansobi described her observations concerning her husband's wrist, hand, and finger pain. AR at 201. She witnessed her husband struggle with lifting things and picking things up. *Id.* He experienced difficulty gardening, buttoning his shirts, and typing on a keyboard. *Id.* "I saw him make frequent mistakes when typing a letter or using the keyboard." *Id.* Due to his condition, Mansobi took over most of the housework requiring use of fingers and/or hands. *Id.*

The ALJ did not at any point in his opinion mention Mansobi's declaration. *See* AR at 8-17. This was error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Because "lay witness testimony *cannot* be disregarded without comment, the ALJ erred in failing to explain [his] reasons for disregarding the lay witness testimony." *Id.* (internal citations and quotation marks omitted). Here, the ALJ did not acknowledge reviewing the lay witness testimony, let alone provide a reason for discounting that testimony. *See* AR at 8-17.

Such error is not harmless unless this court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. This court so concludes. Although the ALJ did not specifically reference the Mansobi

12

declaration, he devoted a paragraph of his opinion to addressing the limitations reported by the plaintiff which were virtually identical to those Mansobi described. *See Molina*, 674 F.3d at 1116; AR at 15, 200. Thus, although Mansobi's declaration was probative of plaintiff's ability to work, the ALJ had already considered that information in large part. Given this court's finding above that the ALJ made a legally sufficient adverse credibility finding with regard to the plaintiff's own testimony, the ALJ's failure to discuss Mansobi's duplicative testimony was inconsequential to the ultimate disability determination in the context of the record as a whole. *See Molina*, 674 F.3d at 1122 (citation and internal quotation marks omitted). Accordingly, the ALJ's error was harmless.

**C.   The ALJ Did Not Err at Step Four in Finding Plaintiff Could Perform His Past Relevant Work as Generally Performed**

Plaintiff makes two arguments concerning the ALJ's determination that he could perform his past relevant work. JS at 21-22, 24-25. As a threshold matter, he contends that the VE mischaracterized his past relevant work, defining it as sales account executive, DOT 251.357-010. *Id.* Plaintiff also argues that the ALJ erred in determining that plaintiff was capable of performing his past relevant work as a sales account executive because, as actually performed, that work involved extensive data entry. *Id.* at 21.

At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past relevant work. *Lester*, 81 F.3d at 828 n.5; 20 C.F.R. § 404.1520(a)(4)(iv). Plaintiff has the burden of establishing that he cannot "return to his former *type* of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986); *see also Terry v. Sullivan*, 903 F.3d 1273, 1275 (9th Cir. 1990) (citing *id.*) ("The burden of establishing disability is initially on the claimant, who must prove that she is unable to return to her former type of work."). The ALJ, however, must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether

plaintiff can return to his past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *see Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). A claimant is typically the primary source for determining how a job was actually performed. SSR 82-62. But when determining how a job is generally performed, the ALJ can rely on the descriptions given by the DOT or a VE. *See* SSR 82-62; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Nonetheless, a claimant is entitled to challenge an ALJ's classification of his past relevant work under the DOT. *See Villa*, 797 F.2d at 798; *see also, e.g.*, *Goodenow-Boatsman v. Apfel*, 2001 WL 253200, at *7 (N.D. Cal. Feb. 27, 2001) ("plaintiff may challenge the ALJ's classification of her past relevant work according to the DOT"). He "may overcome the presumption that the Dictionary's entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Villa*, 797 F.2d at 798. If the ALJ incorrectly categorizes plaintiff's occupation under a DOT job title "then the description applicable to that category is irrelevant to the determination of the exertional capacities required in [his] former occupation.' " *Villa*, 797 F.2d at 798 (quotation omitted).

Plaintiff did not challenge, or even question, the VE's characterization of his past relevant work at the administrative hearing. But plaintiff now asserts that the VE mischaracterized his past relevant work as that of sales agent, business services, DOT 251.357-010, when the work that he did was actually that of a sales representative, financial services, DOT 250.257-022. JS at 21-22, 24-25.

The record reveals limited information concerning how plaintiff performed his past relevant work as a sales account executive. Given the opportunity by the ALJ to question the VE, plaintiff's attorney asked a single question, unrelated to the DOT classification assigned by the VE to plaintiff's past relevant work. AR at 53-54. And the ALJ did not inquire of plaintiff at the hearing about the nature of

his past work. *See id.* at 33-46.  Thus, the only information in the record comes from plaintiff's Work History Report, in which he listed his job title as "Account Executive" and the type of business as "Balboa Capital." *Id.* at 139.  When asked to provide further information about the job, plaintiff described his daily activities thusly: "calling prospects & putting in information about them using my hand & repetitive keyboarding." *Id.* at 140.  Additionally, he noted that in this position he sat for eight hours, and wrote, typed, and/or handled small objects eight hours a day.  *Id.*  At the hearing, plaintiff volunteered that his previous "positions" – without specifying that these included his account executive work at Balboa Capital – required repetitive use of his hands to input information almost six hours out of an eight-hour day.  *Id.* at 41.  Plaintiff's testimony as to the nature of his job as a sales account executive is unrebutted.

Based upon plaintiff's descriptions, he argues that the VE should have characterized his past relevant work as that of sales representative, financial services, which the DOT describes as:

> Sells financial services to customers of financial institutions:
> Develops prospects from current commercial customers, referral
> leads, and other sources.  Contacts prospective customers to present
> information on available services, such as deposit accounts,
> lines-of-credit, sales or inventory financing, cash management, or
> investment services. . . . May sell services, such as check processing
> and collecting, record keeping and reporting, trust, investment, or
> safekeeping services, or products such as travelers checks, to other
> financial institutions.

DOT (U.S. Dep't of Labor, 4th ed. rev. 1991) § 250.257-022.  This job is classified as light work, requiring frequent handling and occasional fingering.  *Id.*  Consequently, this job would not be available to plaintiff because the ALJ found

15

that he could only "occasionally use the left and right upper extremities for gross and fine manipulation." AR at 14.

The job of sales representative, business services, DOT 251.357-010, which the VE asserted as plaintiff's past relevant work (AR at 52), is described in pertinent part as follows:

> Sells business service, such as food-vending, trading stamps, detective, armored truck, telephone-answering, linen supply, and cleaning service: Develops list of prospective customers by studying business and telephone directories, consulting business associates, and observing business establishment while driving through sales territory. . . . Calls on prospects to explain features of services, cost, and advantages. Writes orders and schedules initiation of services.

DOT (U.S. Dep't of Labor, 4th ed. rev. 1991) § 251.357-010. This job is classified as light work, requiring occasional handling and fingering. *Id.*

Plaintiff principally argues that because Balboa Capital provides financing for the leasing of equipment rather than selling product, plaintiff was more appropriately classified as a sales representative, financial services, rather than as a sales representative, business services. JS at 21-22, 24-25. But there is no information in the record regarding the nature of Balboa Capital's business. Plaintiff described his work as calling prospects and inputting information about them. AR at 140. This description would apply equally to either job. In this respect then, plaintiff has not met his burden to demonstrate that his duties did not fit those set forth in the DOT for the position of sales representative, business services. *See Villa*, 797 F.2d at 798.

What remains is plaintiff's contention that because he reported that his job as an account executive required "repetitive keyboarding," he demonstrated that his job better fit the "sales representative, financial services" position (with its requirement of frequent handling and occasional fingering) than the "sales

16

representative, business services" position (requiring only occasional handling and fingering). The record does not indicate whether the ALJ rejected plaintiff's allegations that his specific job required him to use his hands on a repetitive basis, or whether he concluded that such activities would not distinguish plaintiff's prior job from the occupation described under the heading "sales agent, business services." *See Villa*, 797 F.2d at 798.

But this is not a case like *Villa*, in which the plaintiff presented evidence that his job required heavy work rather than the medium work specified by the DOT for the job ascribed to him. *See id.* Here, the DOT describes both the job of sales representative, financial services and the job of sales representative, business services as light work, and plaintiff does not challenge this exertional level. Instead, plaintiff challenges only the handling requirement in the DOT description of the sales representative, business services job. But this amounts to a challenge to whether plaintiff could perform the work as actually performed, rather than as generally performed. "Indeed, the step four determination that a plaintiff can perform her past relevant work 'either as actually performed or as generally performed in the national economy' assumes that there may be differences between how a job is generally performed and how it is actually performed in a specific work environment." *Pederson v. Colvin*, No. CV 12-9418-PLA, 2013 WL 3989553, at *11 (C.D. Cal. Aug. 1, 2013) (citing *Pinto*, 249 F.3d at 844-45).

Thus, assuming the ALJ erred in finding plaintiff could perform his past relevant work as he actually performed it, such error was harmless given the ALJ's finding that plaintiff could perform his past relevant work as generally performed. *See* AR at 17. Plaintiff here simply did not meet his "burden of proving an inability to return to his former *type* of work and not just to his former job." *See Villa*, 797 F.2d at 798.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: October 16, 2013

SHERI PYM
United States Magistrate Judge